**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MONSERRATE CARABALLO,
    *Plaintiff*,

    v.                               No. 3:21-cv-252 (VAB)

HOME DEPOT U.S.A., INC.
    *Defendant*.

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Monserrate Caraballo ("Plaintiff") has sued Home Depot U.S.A., Inc. ("Home Depot" or

"Defendant") for injuries that he incurred while attempting to access a box of tiles in the West

Hartford Home Depot store. Compl. ¶¶ 3, 6, *Monserrate Caraballo v. Home Depot USA, Inc.*,

HHD-CV-21-6137952-S (Feb. 3, 2021). Mr. Monserrate has brought a negligence claim based

on Home Depot's failure to properly display and position the boxed tiles, and he seeks money

damages, including medical expenses and lost wages. *Id.* ¶¶ 16–21.

Home Depot has moved for summary judgment. Mot. for Summ. J., ECF No. 61 (Feb. 2,

2024).

For the following reasons, Home Depot's motion for summary judgment is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

#### 1.  <u>The December 7, 2020 Incident</u>

On December 7, 2020, Mr. Caraballo went to the Home Depot store located at 503 New

Park Avenue, West Hartford, CT ("the Store"), *see* Pl. Add'l Statements of Material Undisputed

Facts, ECF No. 76-2 ¶ 1 (Mar. 25, 2024) ("Pl. SMF"), to pick up a box of tiles, *see* Home Depot

U.S.A., Inc.'s Statement of Material Undisputed Facts, ECF No. 61-2 ¶ 2 (Feb. 2, 2024) ("Def.

1

SMF"). No one, including any Home Depot employees, was around when the accident occurred, *id.* ¶ 6, and Mr. Caraballo did not see or speak to any Home Depot employees before or after the incident. *Id.* ¶¶ 5, 7.

Mr. Caraballo looked up and down the tile aisle and found the color of tile he was looking for. *Id.* ¶ 8. He then "tried removing a box that [he] wanted" but could not get it out. *Id.* ¶ 9 (alteration in original). The boxed tiles were wedged together with no space in between, preventing Mr. Caraballo from retrieving a box. Pl. SMF ¶ 7. He first tried the boxes on the sides, but then grabbed the box in the center, thinking that it might be easier to pull out. Def. SMF ¶ 10. Mr. Caraballo walked to the end of the aisle and looked for a Home Depot employee who could help him with the box, but did not see anyone. *Id.* ¶ 12. He returned to the box and pulled a strap attached to the box with his right hand. *Id.* ¶¶ 12–13. The strap broke, and Mr. Caraballo hit his left eye with his right fist. *Id.* ¶¶ 13–14. Mr. Caraballo put his hand out to catch his contact lens, and "the whole base of [his] hand filled up with liquid" that he realized had come from his eye. *Id.* ¶ 16.

As a result of the incident, Mr. Caraballo "[c]ouldn't see out of the eye. [He] didn't have no [sic] cornea." Def. SMF ¶ 22.

After the incident, Mr. Caraballo remained in the aisle for less than a minute. *Id.* ¶ 23. He did not visit the customer service desk or report the incident to any Home Depot employees, *id.* ¶ 24, but instead drove himself two or three miles to the Hartford Hospital emergency department. *Id.* ¶ 25.

When Mr. Caraballo returned to the Store at a later date, in order to buy a similar box of tiles, the setup of the aisle was different than it had been on December 7, 2020. Pl. SMF ¶ 13. The boxed tiles were lying flat on the shelf, rather than being flipped on their sides, as they had been on the date of the incident. *Id.*

2. <u>The Tile Boxes and Display</u>

The brand of tiles involved in the incident is distributed solely for Home Depot. *Id.* ¶ 30.

Home Depot does not control anything about the packaging or strapping of the boxed tiles. *Id.* ¶ 31.

The box of tiles that Mr. Caraballo tried to remove had four straps made of "[s]ome sort of plastic." *Id.* ¶¶ 28–29 (alteration in original).

The straps are intended to support the weight of the tiles in the box. *Id.* ¶ 31. The straps are not meant to serve as a handle. *Id.* ¶ 30.

Pallets of flooring tile arrive at the Store heavily shrink-wrapped. *Id.* ¶ 33. Home Depot associates use Home Depot safety knives to cut the shrink wrap. *Id.* ¶ 35. The shrink wrap is thick and associates generally pull it away from the boxes in order to cut it. *Id.* ¶ 36. The safety knives used for this task protrude only one-eighth of an inch, *id.* ¶ 35, and "it would be unusual to cut something underneath it[,]" *id.* ¶ 37.

The boxes of tile are not adjusted on the pallet before they are placed on the shelf. *Id.* ¶ 34. When a customer selects a box of tile from the pallet, they typically pick up the box and put it in their cart. *Id.* ¶ 39. Customers do not typically pull boxes of tile by the straps in order to pick them up. *Id.* ¶ 40.

3. <u>Home Depot's Practices</u>

Home Depot's employees perform a store readiness checklist each morning to ensure that the department is safe. *Id.* ¶ 41.

There is no other training specific to customer safety. Pl. SMF ¶ 21. The web-based safety training for employees focuses on their own safety. *Id.*

Home Depot has a system for opening the Store, wherein all of the products are pulled forward on the shelves. *Id.* ¶ 35. The boxed tiles are typically not pulled forward because of their

weight and because customers buy them in bulk. *Id.* They are also not generally pulled forward because employees run out of time before the store opens and customers arrive and need assistance. *Id.*

Home Depot associates are also trained to be "in the aisles straightening up, cleaning," and addressing any issues they notice, whenever they are not helping a customer. Def. SMF ¶¶ 42–43.

One Home Depot employee indicated that when an associate sees a box with a broken strap, they are supposed to mark it down and remove it from the sales floor. *Id.* ¶ 44. However, Assistant Store Manager Jane Pisani indicated that, if an associate saw a broken strap, they would remove the strap but leave the box on the shelf. Pl. SMF ¶¶ 23–24.

Home Depot does not provide instruction or warning signs to customers, indicating that customers should not remove the boxed tiles themselves or suggesting that customers seek assistance in grabbing the boxes. *Id.* ¶ 27.

Home Depot does not provide signs instructing customers not to cut any plastic wrap around the boxed tiles, nor does it require vendors to place signs saying not to lift the boxes by their straps. *Id.* ¶ 32.

Home Depot does not provide eyewear, gloves, helmets, or other protective gear to its customers. *Id.* ¶ 28.

There are no cameras in the tile section of the Store. Pl. SMF ¶ 14.

### B. Procedural History

On February 3, 2021, Mr. Caraballo filed the Complaint in the Superior Court of the State of Connecticut, Judicial District of Hartford. Compl., *Monserrate Caraballo v. Home Depot USA, Inc.*, HHD-CV-21-6137952-S (Feb. 3, 2021).

On February 26, 2021, Home Depot removed the case to this Court under 28 U.S.C. §

1332(a)(1) and § 1441(a). Not. of Removal, ECF No. 1 (Feb. 26, 2021).

On July 7, 2021, Home Depot filed an Answer to the Complaint with Affirmative Defenses. Answer to Compl. with Aff. Defenses, ECF No. 16 (July 7, 2021).

On September 17, 2021, Mr. Caraballo filed a response to Home Depot's Answer. First Response re Answer to Compl., ECF No. 19 (Sept. 17, 2021).

On February 2, 2024, Home Depot filed a motion for summary judgment. Mot. for Summ. J., ECF No. 61 (Feb. 2, 2024) ("Mot."); Mem. of L. in Supp. of Mot. for Summ. J., ECF No. 61-1 (Feb. 2, 2024) ("Mem.").

On March 25, 2024, Mr. Caraballo filed an objection to the motion for summary judgment. Obj. to Mot. for Summ. J., ECF No. 76 (Mar. 25, 2024) ("Opp'n").

On April 9, 2024, Home Depot filed a reply to Mr. Caraballo's objection. Reply to Response to Mot. for Summ. J., ECF No. 81 (Apr. 9, 2024).

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

5

preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013)

6

(citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    DISCUSSION

In its motion for summary judgment Home Depot argues that Mr. Caraballo's claim, although presented as a premises liability claim, is a product liability claim preempted by the Connecticut Product Liability Act ("CPLA"). Mem. at 1. Home Depot also argues that Mr. Caraballo's claims cannot succeed because he has not produced any expert testimony regarding the strap that caused his injuries, a requirement, under Connecticut law, to establish both a product defect and causation in product liability or "product related" cases. *Id.* at 8–9. Finally, Home Depot argues that Mr. Caraballo has not produced evidence sufficient to support either a CPLA or premises liability claim. *Id.* at 9–22.

The Court will address each argument in turn.

### A.  Connecticut Product Liability Act Preemption

The Connecticut Product Liability Act ("CPLA") governs all claims arising under Connecticut law for injuries caused by any product. *See* Conn. Gen. Stat. §§ 52-572m *et seq.* Under the Act, a "product liability claim" encompasses any "claim[] or action[] brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." *Id.* § 52-572m(b). Under § 52-572n(a), a "product liability claim" must be asserted "in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." "By operation of this section, the CPLA becomes, in effect, a mandatory one-stop shop under Connecticut law

7

for product liability claims." *Acadia Ins. Co. v. Conn. Light & Power Co.*, No. 3:12-CV-1467 (MPS), 2013 WL 467817, at *1 (D. Conn. Feb. 7, 2013).

"'[T]he CPLA does not preempt all common law theories of product liability,' but merely 'bars separate common law causes of action in product liability cases.'" *Doran v. Glaxosmithkline PLC*, 607 F. Supp. 3d 192, 199 (D. Conn. 2022) (quoting *Densberger v. United Techs. Corp.*, 297 F.3d 66, 70 (2d Cir. 2002)). Plaintiffs seeking to assert product liability claims therefore must bring a single cause of action under the CPLA, although their complaint may incorporate multiple common law theories. *Id.*

Yet, while "the product liability act was designed in part to codify the common law of product liability," it "was not designed to eliminate claims that previously were understood to be outside the traditional scope of a claim for liability based on a defective product." *Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769, 773 (Conn. 2003). Accordingly, where a plaintiff seeks to advance a claim that "falls outside the purview of the product liability act . . . the exclusivity provision will not serve as a bar." *Id.* In other words,

> the product liability act was intended to serve as the exclusive remedy for a party who seeks recompense for those injuries caused by a product defect, . . . [but] was not designed to serve as a bar to additional claims . . . either for an injury not caused by the defective product, or if the party is not pursuing a claim for "personal injury, death or property damage . . . ."

*Id.* (quoting Conn. Gen. Stat. § 52-572m(b)). When determining whether other claims may be pursued alongside a claim under CPLA claim, the operative question is therefore whether the other claims are, at their core, product liability claims. In *Gerrity*, applying these principles, the court allowed the plaintiff to assert a CUTPA claim alongside their CPLA claim because the CUTPA claim sought "to redress a merely *financial injury* suffered by the decedent, of a kind that has never been regarded as part of the traditional tort remedy for harm caused by a defective product." *Id.* at 775 (emphasis in original)).

8

In contrast, other courts have limited plaintiffs to CPLA claims, striking or granting summary judgment on additional claims that they concluded fell under the umbrella of product liability. In *Mazurek v. Great American Ins. Co.*, for example, a worker injured in a fall from scaffolding at a worksite sued the lessor of the scaffolding and property owner that leased the scaffolding, alleging negligence, recklessness, and various other state tort claims. 930 A.2d 682, 683 (Conn. 2007). The trial court granted summary judgment on the portion of the complaint alleging that the defendant had failed to warn the plaintiff about the dangers associated with the scaffolding, finding that the claim was barred by the exclusivity provision of the CPLA. *Id.* at 687.

Similarly, in *Walker v. Stop & Shop Supermarket, Co.*, the plaintiff sued Stop & Shop for injuries sustained from a fall on a swing located in the store, bringing claims for both common law negligence and products liability under the CPLA. No. HHB-CV-19-6050315-S, 2021 WL 3829191, at *1 (Conn. Super. Ct. July 30, 2021). The court found that, although the plaintiff did not directly argue that her injuries resulted from the product, she did argue that the swing itself was unsafe, unstable, and vulnerable to injuring customers, and that it was displayed in an unsafe manner without adequate warnings. *Id.* at *2. The court therefore granted the defendant's motion to strike the negligence claim, finding that, because it fell within the scope of the CPLA, it was barred by the CPLA's exclusivity provision. *Id.* at *2–3.

And in *Zarikos v. Signature Bldg. Sys., Inc.*, the trial court struck all counts of the complaint besides the count brought under the CPLA, concluding that all of the plaintiffs' claims sought damages for personal injury or property damage caused by their allegedly defective prefabricated modular home—harm, in other words, covered by the CPLA. No. X-08-CV-044000284-S, 2009 WL 1140457, at *4–5 (Conn. Super. Ct. Mar. 24, 2009).

Home Depot urges the Court to construe Mr. Caraballo's claim as a product liability

claim within the scope of the CPLA, thereby necessitating the dismissal of any common law negligence claims. Mem. at 8. It argues that Mr. Caraballo's allegations—that "Home Depot was negligent for failing to properly maintain and inspect the tile display, failed to warn him of the dangers of the strapped boxes and failed to place warning signs at or near the strapped boxes, and displayed the strapped boxes in a dangerous manner"—mirror the allegations put forth in *Walker* and *Mazurek* and constitute a classic product liability claim.

Mr. Caraballo argues that Home Depot has misconstrued his arguments and emphasizes that the case is properly pled as a negligence case because it "involves Defendant's failure to properly and safely display the subject boxed tiles" by stacking the boxes tightly on the pallet "in such fashion . . . that made it an impossibly difficult exercise to remove the boxed tiles in a safe manner." Opp'n at 9. Mr. Caraballo further argues that, although Home Depot is a product seller and his claims involve a specific product, his claims focus on "Defendant's manner and method in the way it displayed and placed this product on its floor." *Id.* at 10. Finally, Mr. Caraballo distinguishes this case from *Walker*, noting: (1) *Walker* was brought as both a product liability and negligence case, and (2) the allegations in *Walker* concerned a swing that was assembled and hung in the Stop & Shop store, and off of which the plaintiff fell—circumstances entirely different than those presented here. This case, he argues, is in fact closer to *Meek v. Wal-Mart Stores, Inc.*, 806 A.2d 546, 551 (Conn. App. Ct. 2002), in which a customer successfully brought a negligence claim against Wal-Mart for personal injuries that he sustained when he was struck by falling merchandise in the self-service retail store. *Id.*

In reply, Home Depot again argues that Mr. Caraballo's arguments "are directly analogous to *Walker*," as the store's placement and display of the product in question was a central issue in both cases. It thus argues that the CPLA preempts Mr. Caraballo's negligence claim.

10

The Court disagrees.

Put simply, Mr. Caraballo has not raised a product liability claim. Mr. Caraballo alleges that he was injured as a result of Home Depot's method of stocking boxes of tile in the Store, which created a display in which boxes were wedged so tightly on the pallet that they were difficult for customers to remove safely. Opp'n at 12–13. His allegations have nothing to with the product itself or its ability to be used safely; indeed, Mr. Caraballo has not even alleged that he ever purchased or used the tiles. Although his allegations involve a component of the product's packaging—the strap on the exterior of the box of tiles—Mr. Caraballo does not allege that the packaging was generally defective or unsafe. Rather, Mr. Caraballo argues that the strap was dangerous in the context of the hazardous display. *See id.* at 15 ("The strap breaking was a consequence of the product not being accessible and the strap acting like and behaving like a handle to use when there is no other purchase point one can access to retrieve the box from the shelf . . . Why are there broken straps? . . . This wouldn't occur . . . if Home Depot made the box tiles more readily accessible.").

This case thus stands in contrast to the two cases relied upon by Home Depot. In *Mazurek*, the plaintiff's injuries resulted from the "unreasonably dangerous and hazardous condition of the scaffolding, particularly that the surface was smooth, coated, and slippery." 930 A.2d 689. Although the plaintiff sought to sue the lessor of the scaffolding and the owner of the property for negligence and recklessness, the personal injuries suffered by the plaintiff were the result of the condition of the scaffolding, and therefore fell within the scope of the CPLA. *Id.* ("[I]f Handy breached a duty to warn or to instruct the plaintiff about the condition of the scaffolding, the exclusive remedy was a claim pursuant to the product liability act."). In *Walker*, as Mr. Caraballo notes, the plaintiff's claims arose from injuries incurred when she fell off of a swing that was set up inside of a Stop & Shop store. 2021 WL 3829191, at *1. There, the

11

plaintiff's "claims clearly allege that the product was dangerous and unstable for those over a certain weight, and was defective because of the way it was displayed and the lack of warnings or instructions"—she therefore could not escape the CPLA's exclusivity provision. *Id.* at *3. While, in both of these cases, the plaintiffs advanced claims related to the allegedly defective manner of displaying the product in question, their injuries indisputably arose from use of the product itself. As a result, it was appropriate that the courts confined their claims to the CPLA.

Here, because Mr. Caraballo's injury did not stem from his use of the tiles in question, but rather, allegedly, from Home Depot's manner of storing the boxed tiles in the Store, his claim should not be construed simply as a product liability claim. *Cf. Meek*, 806 A.2d at 556 ("Injuries also may result indirectly from a proprietor's defective or negligent display of merchandise that nonetheless are wholly to be expected from the store's mode of operation and may be taken into account by the fact finder when it considers whether the method of display was unsafe.").

Accordingly, Mr. Caraballo's claim can be construed as a premises liability case arising from Home Depot's method of displaying the boxed tiles in the Store.[1]

### B.  The Negligence Claim

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Baptiste v. Better Val-U Supermarket, Inc.*, 811 A.2d 687, 690 (Conn. 2002) (internal quotation marks omitted). Business owners generally owe their invitees a duty to "keep [their] premises in a reasonably safe condition." *Id.* at 687. "In

---

[1] To the extent that any element of a product liability claim remains, Mr. Caraballo has offered to file an amended complaint removing such allegations. Opp'n at 11. The Court does not find such amendment necessary at this juncture, as the Complaint sets forth a clear premises liability claim and Mr. Caraballo has agreed that this is the only claim he intends to pursue in this litigation. Accordingly, the Court will henceforth treat this case as a negligence case. Likewise, because the case will proceed only on a theory of premises liability, the Court need not consider Home Depot's arguments regarding the alleged insufficiency of the evidence to support a claim under the CPLA, including Mr. Caraballo's failure to retain an expert. *See* Sections III and IV, Mem. at 8–15.

addition, the possessor of land must warn an invitee of dangers that the invitee could not

reasonably be expected to discover." *Considine v. Waterbury*, 905 A.2d 70, 89 (Conn. 2006)

(internal quotation marks omitted).

In the context of a negligence action based on defective premises, a breach of duty by a

defendant requires that the defendant "knew of the defective condition or [was] chargeable with

notice of it . . . ." *Cruz v. Drezek*, 397 A.2d 1335, 1339 (Conn. 1978). In other words, "[f]or [a]

plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is]

incumbent upon [him] to allege and prove that the defendant either had actual notice of the

presence of the specific unsafe condition which caused [his injury] or constructive notice of it . . .

." *DiPietro v. Farmington Sports Arena, LLC*, 49 A.3d 951, 957 (Conn. 2012) (quoting *Baptiste*,

811 A.2d at 690) (alterations in original)). Any actual or constructive notice must be of "the very

defect which occasioned the injury" and not simply of conditions that might naturally produce

that defect. *Id.*

As a result, in the context of a premises liability case,

> the plaintiff must prove in addition to the above elements of
> negligence, (1) that the defendant was in possession and control of
> the premises; (2) that an unsafe condition or defect existed on the
> premises; and (3) that the defendant had knowledge of or notice of
> its existence, or in the exercise of reasonable supervision and
> inspection should have known of said condition a reasonable period
> of time before the plaintiff was injured yet failed to correct the same.

*Brye v. State*, No. CV-065000745, 2012 WL 803438, at *5 (Conn. Super. Ct. Feb. 17, 2012),

*aff'd Brye v. State*, 81 A.3d 1198 (Conn. App. Ct. 2013) (citing *LaFlamme v. Dallessio*, 802

A.2d 63, 67 (Conn. 2002); *Kirby v. Zlotnick*, 278 A.2d 822, 824–25 (Conn. 1971)).

"The controlling question in deciding whether the defendants had constructive notice of

the defective condition is whether the condition existed for such a length of time that the

defendants should, in the exercise of reasonable care, have discovered it in time to remedy it."

*Cruz*, 397 A.2d at 1339. "What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case." *Kelly v. Stop & Shop, Inc.*, 918 A.2d 249, 256 (Conn. 2007); *see also id.* ("[w]here some evidence has been submitted, what constituted a reasonable length of time becomes a question of fact").

There are two exceptions to the notice requirement. First, "[i]f the plaintiff . . . alleges an affirmative act of negligence, i.e., that the defendant's conduct created the unsafe condition, proof of notice is not necessary." *Fuller v. First National Supermarkets, Inc.*, 661 A.2d 110, 111 (Conn. App. Ct. 1995) (internal citations and quotation marks omitted). "In these types of cases, the defendant is deemed to have actual notice of the dangerous condition that its employees created." *Tuite v. Stop and Shop Cos., Inc.*, 696 A.2d 363, 366 (Conn. App. Ct. 1997). Second, the "mode of operations rule" presents a limited exception to the notice requirement for premises liability cases. Developed in response to "the proliferation of self-service retail establishments," the rule "allows a customer injured due to a condition inherent in the way [a] store is operated to recover without establishing that the proprietor had actual or constructive knowledge of the dangerous condition." *Kelly*, 918 A.2d at 256 (quoting *Jackson v. K-Mart Corp.*, 840 P.2d 463, 467 (Kan. 1992)).

As a preliminary matter, Home Depot has not disputed the existence of three of the four elements of negligence: duty, causation, and actual harm. Home Depot disputes only the "breach of duty" element by claiming that it did not have actual or constructive notice of the specific unsafe condition that caused Mr. Caraballo's injuries, namely the condition of the straps on the boxes of tile. Mem. at 15. More specifically, Home Depot argues that Mr. Caraballo has presented no evidence that a Home Depot employee "create[d] a defect in the strap" or that any Home Depot employee "knew it was damaged." *Id.* at 16. Home Depot further argues that Mr. Caraballo cannot prove constructive notice because "he cannot prove how long the strap had

14

been damaged[,]" *id.*, or that it had been damaged prior to the incident, meaning that he cannot prove that "the condition had existed for such a length of time that the [defendant's] employees should, in the exercise of due care, have discovered it in time to have remedied it[,]" *Kelly*, 918 A.2d at 256. Finally, Home Depot argues that Mr. Caraballo is precluded from raising arguments under the mode of operations rule because he did not adequately allege that theory in the Complaint. Mem. at 18–19.

In response, Mr. Caraballo argues that notice is unnecessary because here, as in *Meek*, Home Depot created the hazardous condition by "negligently stack[ing] the pallets of boxed tiles in an unsafe manner, thereby causing Plaintiff to become injured during his attempt to retrieve one of the boxed tiles." Opp'n at 22. In the alternative, Mr. Caraballo argues that Home Depot had actual notice of the hazardous condition of the boxed tile display because its employees placed the boxes on the pallet and removed the shrinkwrap, in order to create the display. *Id.* at 21–22. Finally, Mr. Caraballo argues that a factfinder could infer Home Depot's constructive knowledge of the defective condition based on the "defendant's routine, practice and procedure in stacking the boxed tiles in the format it did as well as the daily inspections it performs walking the aisles." *Id.* at 21. Mr. Caraballo concedes that his Complaint did not plead a mode of operation theory of liability; as such, he does not pursue such a claim. *Id.* at 26.

Home Depot replies that it cannot have created the hazardous display because it did not alter the manner in which the boxes were loaded onto the pallet upon delivery to the Store. Reply at 6. Moreover, to the extent that the boxes were wedged together on the pallet in a way that varied from how they were stacked upon delivery, Home Depot claims that it was not responsible for any "intervening act by a third party" that might have resulted in a damaged strap or an unsafe display. *Id.* at 7. Home Depot also argues that Mr. Caraballo cannot sustain his case solely based on Home Depot's practice of stacking boxes tightly together because "a company's

policies and procedures cannot be used to impute constructive notice. Reply at 8 (citing *Camera*, 2020 WL 3051751, at *8). As in its initial motion, Home Depot again argues that Mr. Caraballo has presented no evidence sufficient to prove constructive notice. *Id.* It emphasizes that Mr. Caraballo has not produced any evidence of the strap's condition prior to the accident or that an undamaged strap can break when pulled. Finally, Home Depot argues that Mr. Caraballo has failed to produce any evidence that its method of stacking boxes constituted an unreasonable or recurring hazard. *Id.*

The Court disagrees.

At this stage of the case, the Court must determine whether there exists a genuine issue of material fact of Home Depot's alleged breach of its duty to Mr. Caraballo by creating, or failing to remedy, the allegedly unsafe display of boxed tiles. There is.

Most of Home Depot's arguments focus on the allegedly defective strap. But the salient issue is not whether the strap that Mr. Caraballo pulled was defective, broken, or otherwise damaged. Instead, it is whether Home Depot "fail[ed] to properly stack and/or display the tiles for the safety of its customers[,]" such that when Mr. Caraballo pulled the strap, he injured himself. Opp'n at 2; *see also* Compl. ¶ 10(b) (alleging that Home Depot "created the defective, dangerous and hazardous condition with its design of improper stacking and placing of the strapped boxed tiles"); Opp'n at 16 ("this is an improper display, not a defective strap or warning defect claim"). The question, therefore, is not whether Home Depot had adequate notice of an alleged defect in the strap that Mr. Caraballo pulled, but whether Home Depot had adequate notice of the generally unsafe method of stacking the boxed tiles.

Mr. Caraballo has met this burden. As noted in *Meek*, "[i]n a self-service operation, an owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees." 806 A.2d at 555 (citing *Ciminski v. Finn Corp.*, 537 P.2d 850, 853 (Wash.

16

Ct. App. 1975, *review denied*, 86 Wash. 2d 1002 (Wash. 1975)). The savings associated with a self-service model have been accompanied by a "proliferation" of injuries. *Id.* Courts thus have found that, in such establishments, "[t]he merchant must use reasonable care in placing goods on the store shelves" such that they are not susceptible to falling or otherwise injuring customers. *Meek*, 806 A.2d at 555 (quoting 1 Premises Liability Law and Practice (2002) § 4.04[6]). When assessing a retailer's method of displaying goods, fact finders may consider "the method of stacking, the presence or absence of lateral support, and the stacked item's dimensions and center of gravity[,]" and special obligations may arise "in regard to the storing and stacking of large, cumbersome, or unstable items[.]" *Id.* at 555–56.

Many of the cases applying this theory stem from instances of falling merchandise. *See, e.g.*, *id.* at 555; *Gachinsky v. Wal-Mart Stores, Inc.*, No. 18-CV-6032751-S, 2019 WL 1938598, at *2–3 (Conn. Super. Ct. Apr. 5, 2019) (denying summary judgment to the defendant, where the plaintiff was struck and injured by falling merchandise, because there remained genuine issues of material fact as to the defendant's method of stacking the merchandise, mode of operation, as well as any affirmative actions taken); *Holody v. First Nat. Supermarkets, Inc.*, 559 A.2d 723, 724 (Conn. App. Ct. 1989) (denying summary judgment to the defendant, where the plaintiff was struck and injured by falling bottles of grapefruit juice, because "[t]he jury could reasonably have found from the evidence submitted to it that the proximate cause of the plaintiff's injuries was the failure of the defendant to display the juice bottles in a safe manner."). Yet, others have arisen from injuries incurred by customers who have slipped and fallen on spilled merchandise. *See, e.g.*, *Kelly*, 918 A.2d at 264 (reversing the trial court's entry of summary judgment on behalf of the defendant because a fact finder reasonably could have concluded that the plaintiff, who slipped and fell on a piece of lettuce that fell from the defendant's self-service salad bar, was injured as a result of the defendant's negligence).

17

Home Depot suggests that the "special obligation" to use reasonable care in placing goods on store shelves is inapplicable to this case because it does not involve falling merchandise. Reply at 6 ("Caraballo's case does not involve falling merchandise, so the 'special obligation' [described in *Meek*] is not implicated here."). The Court sees no reason to apply such a restriction, especially since Home Depot has not contested that it is a self-service retailer, *see* Pl. SMF ¶ 27 ("Home Depot asserts that their store is a working warehouse and not only is aware, but allows customers remove the boxes themselves"), nor that Mr. Caraballo's injury stemmed from his attempt to remove a product from one of the Store's shelves, *see* Mem. at 2 ("Caraballo tried removing a box that [he] wanted . . . but couldn't get it out . . . He then pulled the strap with his right hand . . . At that point, Caraballo hit his left eye with his right fist.") (internal citations and quotation marks omitted).

If a factfinder were to find that this injury was attributable to Home Depot's failure to apply reasonable care in stacking the boxed tile, Home Depot then cannot escape liability merely because the injury was caused by wedged, as opposed to falling, merchandise. *See Meek*, 806 A.2d at 558 ("The measures taken by large, self-service retail merchandising establishments to protect their invitees must be commensurate with the risks inherent in that method of store operation. Any economic loss resulting from the avoidance of those risks, if it exists, should be borne by such commercial enterprises as a cost of doing business." (citations and internal quotation marks omitted)). The lack of falling merchandise in this case thus does not preclude Mr. Caraballo from proceeding under a "special obligation" theory.

Home Depot also argues that it cannot be liable under an affirmative action theory because it simply maintains the arrangement of the boxed tile within the pallets as delivered to the Store. *See* Def. SMF ¶¶ 33–34 ("Pallets of flooring tile arrive at the West Hartford Home Depot store heavily shrink wrapped" and "Home Depot does not adjust the boxes of tile before

putting them on the shelf."). Yet, such a protocol would not necessarily absolve it of liability. Regardless of whether Home Depot actively rearranges the boxes of tile within the pallets before displaying them in the Store's aisles, it has a duty to "use reasonable care in placing goods on the store shelves," *Meek*, 806 A.2d at 555 (citation and internal quotation marks omitted), and creating a display that is safe for customers.

Moreover, Home Depot has acknowledged that, as part of its typical protocol, employees do regularly move some products, in order to make them easier to access for customers. Pl. SMF ¶ 35 ("Home Depot has a system for opening the store whereby all of the products are pulled forward on the shelves."). This protocol was not typically followed for the boxed tiles, at least in part because employees ran out of time before the store opened, or because they found the boxes too cumbersome to move. *Id.* ("the boxed tiles are not pulled forward . . . [in part] because the store opens and employees run out of time before customers arrive and need assistance; and further because associates are going to go after the 'easy stuff' to pull first").

Home Depot also admits that it posted no warning signs on or near the display to instruct customers not to lift or pull the boxes of tiles by the straps. Opp'n at 5 ("Home Depot provided no instruction or warning signs to customers not to remove the boxed tiles themselves or to seek assistance in grabbing them." (citing *id.* ¶¶ 37–38)). From these facts alone, let alone the others in the record, a reasonable factfinder could find that Home Depot committed an affirmative act of negligence by designing and maintaining the boxed tile display. *See Meek,* 806 A.2d at 556 ("A storekeeper who balances merchandise on display in a precarious manner (or allows another to so arrange a display) should anticipate that slight force, not sufficiently ordinarily to suggest to the actor who does not know of the peril that injury will result, may be sufficient to cause injury, and the storekeeper is not relieved of the consequences of this negligence by an intervening act which he should have anticipated." (citation and internal quotation marks omitted)).

19

Finally, contrary to Home Depot's arguments, *see* Reply at 6 ("if customers damaged a strap, that would be an intervening act by a third party that would preclude recovery on the Affirmative Act rule"),[2] stores remain liable for unsafe displays, even where the plaintiff's injury is attributable to the action of another customer, so long as that action was foreseeable. *Id.* at 556. "[W]here the storekeeper operates under a self-service system, he must take into account the possibility of shoppers disarranging the merchandise and possibly leaving it in a dangerous condition[.]" *Id.* at 556 (quoting 62A Am. Jur. 2d 159, 163, Premises Liability § 595 (1990)); *see also Kelly*, 918 A.2d at 263 ("ordinary and foreseeable activities of patrons, not amounting to independent acts of negligence, should not result in injury to fellow patrons or themselves; and a merchant is negligent if he has so arranged his merchandise that such activities can cause merchandise to fall resulting in injury" (quoting *Meek*, 801 A.2d at 557)). Thus, even if the display of the product, through for example, wedged boxes, resulted from the actions of another Home Depot customer, such intervening acts would not necessarily preclude recovery.

The two cases cited by Home Depot in support of its argument against constructive notice, *Camera v. Target Corp.*, No. 3:18-CV-00095 (KAD), 2020 WL 3051751 (D. Conn. June 8, 2020); *Navarro v. Kohl's Dep't Stores, Inc.*, No. 3:05-CV-00843 (DJS), 2007 WL 735787 (D. Conn. Mar. 8, 2007), are both slip-and-fall cases with only limited relevance to this one. In those cases, the courts granted summary judgment to defendants on the issue of constructive notice because they found that the plaintiffs had not produced any evidence that the hazardous

---

[2] Home Depot's reliance on *Holody v. First Nat. Supermarkets, Inc.*, 559 A.2d 723, 724 (Conn. App. Ct. 1989), to support this point is misplaced. In that case, the court held that "the concern is whether the plaintiff produced evidence from which the jury could infer and reasonably believe, in the exercise of common sense, that it was more probable than not that the defendant, without any intervening action by others, had placed juice bottles in a dangerous position, and that this placement was the proximate cause of the plaintiff's injuries." *Id.* Yet, since then, in *Meek*, the Connecticut Appellate Court has clarified that, in the context of self-service retail establishments, "[t]here is no logical distinction, however, between a situation in which the storeowner directly creates the condition or defect, and where the storeowner's method of operation creates a situation where it is reasonably foreseeable that the expectable acts of third parties will create a dangerous condition or defect." *Meek*, 806 A.2d at 557.

condition—in both cases, a slippery, spilled substance on the floor—had existed for such a length of time that the defendant should have remedied it. *Camera*, 2020 WL 3051751, at *8 (granting summary judgment to the defendant because there was no evidence in the record from which the jury could infer that the alleged soapy substance on which the plaintiff slipped had remained on the floor for an unreasonable amount of time); *Navarro*, 2007 WL 735787, at *6 (granting summary judgment to the defendant because "there [was] an insufficient evidentiary foundation to support a reasonable inference that the defect was in place for a sufficient length of time so as to impute constructive notice upon [the defendant]"). In *Camera*, moreover, the court found that evidence regarding the defendant's general practice of regularly inspecting the floor could not give rise to an inference of constructive notice. 2020 WL 3051751, at *8.

But those cases did not involve the specific issues present here "in regard to the storing and stacking of large, cumbersome, or unstable items," *Meek*, 806 A.2d at 556, and the potential, foreseeable disarrangement of such displays by customers. *Id.* ("[W]here the storekeeper operates under a self-service system, he must take into account the possibility of shoppers disarranging the merchandise and possibly leaving it in a dangerous condition; therefore, where a storekeeper has no basis for believing that customers will discover a dangerous condition or realize the risk involved, he is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm.").

Taken together, a reasonable jury could conclude that the self-service nature of the Store, and its resulting heightened duty of care; the potentially foreseeable action of other customers rearranging the boxed tiles; the lack of warnings; and Home Depot's stated policy of conducting regular safety inspections, could constitute a "definite basis in the facts," rising above "mere speculation or conjecture," *Camera*, 2020 WL 3051751, at *8, sufficient to support an inference of constructive notice.

Accordingly, Mr. Caraballo may proceed with his premises liability claim, under alternative theories of actual or constructive notice.

**IV.     CONCLUSION**

For the foregoing reasons, Home Depot's motion for summary judgment is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 7th day of June, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE